Scott, J. The question of jurisdiction will be first considered, and as this must be based upon surprise or fraud, if sustainable at all in this case, we must necessarily look throughout the whole record to ascertain if such facts and circumstances exist as to constitute a foundation for the interposition of the chancellor, with authority derived from either of these sources. But, even at the threshold oí this inquiry, we are met with a technical objection, which, if well taken, must not only limit its range to the bill and answer, but will also circumscribe within that scope the appellee’s claim for relief, in case the question of jurisdiction shall be found in his favor. That objection is, that, inasmuch as the record presents, upon its face, no replication to the answers, the law coniines the hearing to the bill, answers, and exhibits, and thus the depositions will be excluded. And such is undoubtedly the law, of which our statute, referred to by the appellants, is but a declaration or affirmance: and in such case the answer must be taken as true in all things, whether the matter contained in it be responsive or not, or whether it be negative or affirmative, for the reason, not only that the complainant in the bill thereby intimates his admission of all these facts, but also that by this omission he prevents the respondents from proving such of them as he would otherwise have to establish by evidence, by paralysing his authority to sue out a commission to examine witnesses, which neither party can do until after an issue shall have been formed by the pleadings, unless for aged and infirm witnesses, and in other cases, which are within the range of the exception to this rule. But can this objection, at this late hour, and in this court, be urged successfully? The reeord shows that, at the June term, 1847, both parties being then present in the court below the case was set down for hearing at the succeeding term upon the issues thereto formed, and that leave was given to both sides to sue out commissions and take depositions, and that, at the May term, 1848, the cause was heard upon the bill, answers, replications, exhibits, and depositions. These entries seem to repel the supposition that no replications had ever been filed, and places the case fully within the range of those presumptions of the regularity in the proceedings of the court below which the law authorizes this court to indulge, and seems fully sufficient to authorize us in this case to indulge this presumption to the extent of supplying by intendment the record entry of the filing of the replications upon the hypothesis that its failure to appear there was in consequence of a hiere clerical omission. Then, looking at the whole record, it appears that the next day after the issuance and service of the summons, both of which were on the same day, the parties referred to arbitration the subject matter of the suit; that the payment of $70 was awarded, but the exact performance of the award was not insisted upon: on the contrary, a substantial, but different, performance was that day accepted in a note for that sum, at six months, secured by a lien on property, and, both parties seeming to be satisfied, it was agreed that the suit should be dimissed at the cost of the defendant in that suit, but this was not to be done “ until all the costs that had accrued therein, up to the date of the settlement, should be by the defendant paid;” but no time for the payment of the cost was agreed upon, nor in any way indicated, further than that the suit should not be dismissed until this was first done.: that the note, thus given and secured, was delivered to Sneed, the acknowledged authorized agent of Haddock and Hazel tine in the premises, and remained in his hands at the filing of the bill in equity, it having not then matured, nor does it appear that it was ever offered to be surrendered up to Town, or to the court to be canceled; and that, shortly after this settlement, Town left the State for the east, and did not return until after the judgment at law had been rendered against him. Under this state of facts, it would seem that nothing was obligatory upon Town, connected with the suit at law, so far as equity and good conscience were concerned, other than the payment of the costs as agreed upon, and no circumstance whatever appears from which he could have ever suspected that the plaintiff in that suit would ever progress with it for any other purpose than to coerce the payment of these costs. True, as no time for this payment was specified in the agreement, if might perhaps have been presumed that this should be done at or before the calling of the cause for trial at the succeeding term of the court; but, upon his failure to do so, there was no ground for him to suspect that the plaintiffs would do more than to take a judgment against him by default, and immediately remit all but the costs, for beyond this they could not go in good conscience, and he was not authorized to presume that they would do an iniquitous act, and, as he could not have had the slightest use for an attorney at the succeeding term of the court, it is inconceivable that he should have employed one, and inevitable that he must have been most completely surprised on his return home, a few months afterwards, to find his appearance of record, by a nameless attorney, and a judgment against him, for a hundred dollars, on account of a demand for which full satisfaction had been long before accepted in a note for $70, at six months, secured by a lien on property, which had not been returned or offered to be surrendered, to the court, for cancellation. We are aware that that surprise at law, against the consequences of which equity will relieve, must arise from facts and circumstances which must not only be true, but must have been beyond the control of the complainant. But this rule does not extend to a case of mere possibility of control in a very remote contingency altogether improbable, as that would exclude numerous cases where relief had been granted by the most respectable courts in the Union, adhering to the rule but evidently relaxing it in its application to particular cases of hardship, but in truth not departing from the principle upon which the rule is founded. And we cite some of these cases, not to give them our special approval, for some of them seem to have gone beyond prudent bounds, but to indicate, in some sort, the character of that surprise at law against the consequences of which equity will relieve. The cases in 3 Call. 536, 1 Mad. 64, 4 Mun. 69, 2 P. Williams, 426, are cases where, after a trial at law, a receipt, or other evidence, has been' found. The case in 2 Hen. & Mun. 10, is where the party defendant was absent from the State, and his counsel was sick, at the time of the trial at law: 4 Hen. & Mun. 427, where the defendant mistook the court to which he was sued: 4 Mun. 110, where he mistook the time of trial, with other circumstances of hardship : 4 Mun. 58, where an executor was mislead by his counsel in the management of his cause: 4 Hen. & Mun. 453, 6 Mun. 418, where the plaintiff at law assured the plaintiff in equity, who was one of the defendants at law, that he would not look to him for his money. And there are in the Virginia reports a number of other cases of like character, some of which go beyond any that we have cited; but in all of them it was required of the complainant to present himself under circumstances showing clearly that the circumstances which were the foundation of the surprise of which he complained, were unmixed with negligence on his part. But, in all cases of this character, the general rule seems to be that the relief granted must be at the cost of the party who seeks it; and this rule seems reasonable, not as being founded in any fault in the party seeking the relief, but as contemplating no particular fault in the other side. Hence, where there might be circumstances to throw a strong presumption of fraud on the plaintiff at law, this rule as to costs would not seem to apply. In the case before us, when we leave out of view Town’s supposed appearance, and plea of nil debet in short upon the record by consent, by and of a nameless attorney, whose personal identity seems equally unknown to either side, he seems to present himself in equity, so far at least as the judgment at law exceeds the costs of that suit, in an attitude of surprise at law, unmixed with negligence on his part. But, if that entry records the truth, and he did indeed appear in court, and, in the first place after seeing the fraudulent designs of the other side, fail to plead his defence puis darrien continuance; and in case he had not discovered these fraudulent designs until too late for this, then failed to move for a new trial, he would be justly chargeable with negligence, and the chancellor’s ears would be closed to his wrongs, unless, moved by an unmitigated abhorrence of fraud, as much to seek out and punish this in the perpetrator, as to aid one who has slept on his rights, he might for this end entertain the cause to examine any allegation of fraud in obtaining the judgment, even one that might question the verity of a part of the record itself, if founded upon other inconsistent entries and strong corroborating facts and circumstances, and, if found to be sustained, grant relief against the judgment. In this case, the allegation of fraud, in obtaining the judgment, rests mainly upon the appearing in court of an unknown attorney; the inconsistency of the action of the court with his recorded doings; the absence of the party he professed to represent, and the iniquitous end achieved by the plantiff in that suit, not only directly, by obtaining a judgment for a demand that he had previously received a satisfaction for, but also in closing the door to a hearing in equity by means of the recorded doings of an unknown attorney, whoso name has not been ascertained. To the direct assertion and charge of falsehood against the record entry of the appellee’s appearance and plea of nil debet, and to the interrogatory to Sneed to state particularly who put in this plea for him, and who on his part consented that it should be entered in short on the record, Sneed cautiously answers that he “admits this plea was put in by some attorney professing to act for (the appellee) Town, but that he knows not who, nor whether Town employed him to do so or not,” but fails to deny positively the charge of falsehood made against this record entry. And Sneed, it appears from the record, was the leading counsel in fact, but whether he was present in court when the judgment at law was obtained does not appear. The inconsistency of the record with itself appears in the judgment entry which recites: “And now on this day the parties came by their respective attorneys, and the said defendant plead his plea of ml debet, to which plea the plaintiff by attorney joined issue, all of which, by consent of parties, is taken in short upon the record: thereupon came a jury, to wit: &c., who, being duly sworn to enquire and assess the damages, &c., returned into court their verdict, to wit : we, the jury, do assess the plaintiff’s damages at $100.” And thus it appears that the issue formed upon the plea of nil debet, was left untouched, and precisely that proceeding occurred as would have occurred had the defendant made default instead of appearing by this unnamed attorney and pleading the plea of nil debet. Now, if we were looking at this record upon a writ of error, the judgment could only be sustained, if at all, upon the presumption that the plea of nil debet had been withdrawn by the leave of the court and a default suffered, but that the entry of the withdrawal and default had been omitted by the clerk, and so, in an appeal in chancery, upon a question of jurisdiction, if his defence was one that courts of law and equity could concurrently entertain, such presumed withdrawal and default might place him in an attitude to be relieved in equity, as he would not thus be shown to have made his election to defend himself in the court at law: in other words, his appearance and plea to the merits and subsequent withdrawal before trial, and default by leave of the court, might perhaps ,b® held for nought. And, in the case before us, to sustain the verity of the record, and to harmonize it with itself, this presumption of withdrawal by leave and default must necessarily be indulged, but then the result would not be the same upon the question of jurisdiction, as the defence which might have been made here by the plea of puis darrien continuance was not concurrently cognizable in law and equity, but exclusively in a court of law, and to have failed to offer it, if the party was really in court, was the height of negligence : then here is another circumstance elicited bearing upon the question of fraud, if the origin of it can be laid at the door of the appellants; and upon the question of surprise, if at the door of the appellee. Now, taking it for granted that the record entry, the truth of which has been questioned, has not been successfully assailed on the hypothesis assumed for its harmony with the balance of the entry, we have still to determine whether, although it may have been in form and appearance true insomuch as to vindicate' the record from having been fraudulently practiced upon and the appellants from fraud in its production, it may not still have been false to the appellee, so as to save him from the imputation of that negligence which would close the door of equity upon him when he would seek relief there upon the ground of surprise at law. Against him, on this point, is the naked record entry, asseverated and charged by him to be false, and this not positively denied, by the answer; in his favor, that the appearance, pleading, and withdrawal from the court of law were altogether against his own interest and in favor alone of the other party, who thereby was not only facilitated in obtaining an iniquitous judgment, but enabled to obtain evidence of negligence to be urged against him when he might go to the chancellor for relief against this iniquitous judgment. The utter improbability that he would employ a lawyer, when he had no use for one, unless to confess a judgment for cost and save the plaintiff from the trouble of taking a judgment by default and then enter a-remittiter for all but the costs; the fact that this attorney is not named upon the record, and could not be pointed out by the leading counsel for the plaintiffs, so as to give Town a remedy over against him, and thus place him within the reason of the law for holding a party bound for the acts of an attorney, for if he cannot be relieved in equity against this judgment, so manifestly iniquitous, because an incognito attorney has assumed to represent him, he is to be sacrificed for being within the terms of the rule but without the reason. Then, looking at the point we are now considering in the light of these considerations, and of all the other facts developed by the bill, answer, replication, exhibits and depositions, we cannot believe that the unnamed attorney, whom the record represents as having appeared and filed the plea of nil clebet for Town, ever did so by his procurement or within his knowledge, and we think he cannot therefore be justly chargeable with that negligence which would exclude him from relief in equity, when basing his claim for relief upon surprise at law, under the circumstances he has shown. The true solution of the appearance of the attorney in the court of law (as this solution, as the name of that attorney cannot be discovered, alike acquits the rcord from foul practice, the appellants from fraud in this particular, and appellee from negligence so far as the main question is concerned that we have been considering) may possibly be found in what has been sometimes known to have occurred in the courts (though very rarely to the honor of the profession) that of attorneys meddling in causes in which they have not been employed or invited, without the knowledge of the party whom they assume to represent, either direct or indirect, and without any foundation for believing that their professionakservices would be acceptable. As to the equities between the parties, the case is clear. So much of the judgment at law as was beyond the cost, was, beyond all question, against equity and good conscience, and as the plaintiff at law held on to the note, at six months, and made no offer to surrender it, for cancellation, to the court of law, and gave the defendant no intimation of dissatisfaction, or of any wish to rescind, and proceeded against him in his absence, so much of the judgment, coupled with the avowed intention to enforce it, was so iniquitous as to rise to the grade of fraud upon his rights. So far as the judgment was for costs it was equitable and just, and had the original subject matter of the suit, though settled, been in such a condition that any adjustment, though merely formal, was needful for the convenience or greater safety of the plaintiff, and the judgment had been taken for the entire debt, as in this case, it would be relieved against in equity, if the party could properly present himself, only at his own costs; but when, as in this case, there is no excuse for not entering a remittiter at law for all beyond the costs, and so many circumstances from which inferences may be drawn that the appellants desired and sought to deal unjustly with the appellee, we do not think the rule of granting relief at the costs of the party seeking it applies. But, inasmuch as the appellee was in default, so far as the payment of the costs in the suit at law was concerned, up to the time when, in progress of the suit in equity, he paid those costs into the court, as he should have carried into court these costs with his bill, it is but justice and equity that he should pay the costs of the proceeding in equity up to that time. So much of the decree, therefore, as adjudges all the costs of the proceed-' ing in chancery in favor of the appellee, must be reversed, and the cause remanded, with instructions to that court to enter up a decree in favor of the appellants for all the costs of the chancery proceeding up to the time inclusive when the costs of the suit at law was paid into the chancery court, and a decree for all the balance of the costs in that court in favor of the appellee. All the residue of the decree of the court below must be affirmed, there being no error in its decree for relief against the judgment at law.